UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAKESSIA A. FOSTER,

                            Plaintiff,

                  v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                            Defendant.
_____

**DECISION
and
ORDER

18-CV-558F
(consent)**

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, and
                            TIMOTHY HILLER, of Counsel
                            6000 North Bailey Avenue, Suite 1A
                            Amherst, New York  14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                   and
                            ANDREEA LAURA LECHLEITNER,
                            Special Assistant United States Attorneys, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza – Room 3904
                            New York, New York  10278

## **JURISDICTION**

On July 9, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

accordance with this court's June 29, 2018 Standing Order (Dkt. 16). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 30, 2019 (Dkt. 13), and by Defendant on February 6, 2019 (Dkt. 14).

## **BACKGROUND**

Plaintiff Lakessia A. Foster ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on April 7, 2015, for Supplemental Security Income under Title XVI of the Act ("SSI" or "disability benefits"). Plaintiff alleges she became disabled on December 1, 2011, based on mental health problems and depression. AR[2] at 15, 190, 220. Plaintiff's application initially was denied on August 3, 2015, AR at 70-83, and at Plaintiff's timely request, on September 29, 2017, a hearing was held in Buffalo, New York, before administrative law judge Mary Mattimore ("the ALJ). AR at 32-69. Appearing and testifying at the hearing were Plaintiff, and her then attorney, Nicholas DiVirgilio, Esq. ("DiVirgilio"), and vocational expert ("VE") Timothy Janikowski appeared and testified by telephone.

On January 8, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 12-31 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council. AR at 156. On March 22, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 11, 2018 (Dkt. 8).

at 1-6.  On May 16, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On January 30, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 13) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13-1) ("Plaintiff's Memorandum").  On February 6, 2019, Defendant moved for judgment on the pleadings (Dkt. 14) ("Defendant's Motion"), attaching Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 14-1) ("Defendant's Memorandum").  Filed on February 27, 2019, was Plaintiff's Reply Brief (Dkt. 15) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Lakessia A. Foster ("Plaintiff" or "Foster"), born April 10, 1975, was 36 years old as of December 11, 2011, her alleged disability onset date ("DOD"), and 42 years old as of January 11, 2018, the date of the ALJ's decision.  AR at 15, 19, 186.  Plaintiff attended high school through 10th grade, dropping out her junior year when she gave birth to her oldest child, AR at 40, 190, and can read, understand and communicate in English.  AR at 189.  Plaintiff has previous work experience as a cleaner, house keeper and factory worker.  AR at 212-19, 267.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

It is undisputed that Plaintiff has struggled with mental health issues since 2011, when Plaintiff's oldest son was murdered at age 19. AR at 358, 370, 425-26, 507. Since then, Plaintiff's second oldest son was killed in December 2014, also at age 19, AR at 425-26, 507, and Plaintiff's mother passed away in September 2014. AR at 359, 507. Plaintiff also has stress in dealing with her surviving six children and the father of her youngest children who repeatedly takes such children from Plaintiff. AR at 545.

## DISCUSSION

**1.  Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 7, 2015, the filing date of her disability benefits application, AR at 17, Plaintiff suffers from the severe impairments of depression, anxiety, insomnia, bereavement (provisional), bereavement uncomplicated other and unspecified reactive

psychosis, borderline intellectual functioning, brief psychotic episode with marked stressors, major depressive disorder, recurrent, moderate (provisional), and disappearance and death of family member (provision), AR at 17, but that additional impairments, including asthma, hypertension, and hyperlipidemia, do not have more than a minimum impact on Plaintiff's ability to perform basic work activities and, thus, are non-severe impairments. AR at 17. The ALJ further found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, AR at 18-19, and that Plaintiff retains the RFC to perform a full range of work at all exertional levels, restricted only by nonexertional limitations including no exposure to dust, fumes, odors, smoke, other pulmonary irritants and poor ventilation, performing only low stress work defined as able to understand, remember and carryout simple, routine tasks and make simple workplace decisions not at a production rate (assembly line) pace, the ability to maintain attention and concentration for 2-hour blocks of time, tolerating occasional changes in work processes, settings and routines, and occasional interaction with supervisors, co-workers and the public. AR at 19-25. The ALJ further concluded Plaintiff is unable to perform any past relevant work, AR at 25, which work was unskilled such that transferability of skills is not an issue, *id.*, but that Plaintiff, given her age, education, work experience and RFC, could perform jobs existing in significant numbers in the national economy including mail clerk, packager – machine, and laborer – stores, AR at 25-26, such that Plaintiff is not disabled as defined under the Act. *Id.* at 26.

Plaintiff does not contest the ALJ's determination with regard to the first three of the five sequential steps, but maintains the ALJ erred at the fourth step in finding

Plaintiff retained the RFC for work that exists in significant numbers in the national economy such that Plaintiff is not disabled under the Act. In support of her motion, Plaintiff argues the matter should be reversed or remanded because the ALJ's determination that Plaintiff's subjective complaints are not fully credible solely because they are not supported by objective clinical observations "defeats the purpose of permitting a claimant to pursue disability based on subjective allegations . . . ," Plaintiff's Memorandum at 16-19, and the ALJ violated the so-called treating physicians rule by assigning "little weight" to the opinion of Plaintiff's long-time treating physician. *Id.* at 19-23. Defendant argues the ALJ's analysis of Plaintiff's subjective complaints complied with the Commissioner's regulations and rulings that provide for evaluating the credibility of subjective complaints based on the objective evidence in the record, Defendant's Memorandum at 18-21, and that in making her RFC determination, that ALJ properly reconciled the conflicting opinions of the treating and consultative mental health examiners in accordance with the treating physician's rule. *Id.* at 12-18. In reply, Plaintiff argues the Commissioner's reference to portions of the Administrative Record does not establish the Commissioner actually relied on such evidence, Plaintiff's Reply at 1-2, the Commissioner's *post hoc* argument regarding Plaintiff's "rather mundane activities" does not undermine Plaintiff's credibility, *id.* at 2, and with regard to the treating physician's rule, the Commissioner did not "meaningfully response to Plaintiff's specific challenges to the ALJ's assignment of weight." *Id.* at 2-3.

1. **Credibility Determination**

Plaintiff maintains the ALJ's determination that Plaintiff's asserted subjective complaints are "at odds with the objective findings and medical opinions" in the

8

Administrative Record is inconsistent with and "defeats the purpose of permitting a claimant to pursue disability based on subjective allegations. . . ."  Plaintiff's Memorandum at 16-19.  In support of her novel argument that subjective allegations need not be supported by objective clinical observations, Plaintiff particularly objects to the ALJ's referencing Plaintiff's activities of daily living in determining Plaintiff was less than fully credible regarding the limitations posed by her mental health impairments.  Plaintiff's Memorandum at 16-19; Plaintiff's Reply at 1-1.  The ALJ's credibility determination, however, is supported by substantial evidence in the record and comports with the relevant regulations.

In particular, the relevant regulations provide a two-step process for evaluating subjective complaints, including,

> First, the ALJ must determine whether the medical signs or laboratory findings show that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. If so, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work.

*Cichocki v. Astrue*, 534 Fed.Appx. 71, 75 (2d Cir. Sept. 5, 2013) (quoting 20 C.F.R. § 416.929(c)(1)).

The ALJ is required to consider all available evidence, and although "objective medical evidence is useful," the ALJ is not permitted to reject the claimant's statements regarding the intensity and persistence of subjective symptoms solely because such statements are not supported by the objective medical evidence.  *Id.* (citing § 416.929(c)(2)).  Nevertheless, "the ALJ 'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'"

*Barnaby v. Berryhill*, 773 Fed.Appx. 642, 643 (2d Cir. May 17, 2019) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). If a claimant's statements are not supported by the objective medical evidence in the record, then "the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements." *Cichocki* 534 Fed.Appx. at 76 (citing *See* SSR 96–7p, 1996 WL 374186, at *4 (July 2, 1996)[5]). Toward this end, the ALJ considers: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of alleged subjective complaints; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, the claimant uses; (6) any other measures used to relieve subjective symptoms; and (7) any other factors concerning the alleged functional limitations and restrictions due to the subjective symptoms. 20 C.F.R. § 416.929(c). Nor is the ALJ required to discuss each of these seven factors so long as the ALJ sufficiently explains the rationale for accepting or rejecting the subjective symptoms "and the record evidence permits us to glean the rationale of the ALJ's decision." *Cichocki*, 534 Fed.Appx. at 76. In the instant case, substantial evidence in the record supports the ALJ's determination that the intensity, persistence and limiting effects of Plaintiff's subjective symptoms as Plaintiff alleges are not consistent with the objective medical and other evidence in the record.

In particular, in contrast to the Plaintiff's assertion, Plaintiff's Reply at 1, that the ALJ merely recites in passing portions of the Administrative Record without commenting

---

[5] In 2016, the Commissioner rescinded SSR 96-7p, replacing it with SSR 16-3p which eliminated the term "credibility" from "sub-regulatory policy" and clarified that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). Nevertheless, "'[t]he standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term 'credibility' is no longer used.'" *Robert R. v. Saul*, 2019 WL 4183569, at * 11 n. 3 (W.D.N.Y. Sept. 4, 2019) (quoting *Debra N. v. Comm'r of Soc. Sec.*, 2019 WL 1369358 at *7, n. 9 (N.D.N.Y. Mar. 26, 2019)).

on how they impact Plaintiff's credibility, a fair reading of the ALJ's Decision establishes the ALJ makes such references to draw a critical contrast between Plaintiff's subjective complaints and the objective medical evidence that would be expected to support such complaints if the complaints were of the asserted intensity, persistence and limiting effects. The ALJ specifically observed, AR at 20, that although on her disability benefits application Plaintiff reported she cannot concentrate because her "mind is racing," AR at 204, and being unable to finish projects she starts, *id.*, Plaintiff also admitted being able to follow spoken and written instructions. AR at 205. Similarly, the ALJ contrasted Plaintiff's administrative hearing testimony that she is unable to focus after 20 minutes, cannot remember a lot of things, which Plaintiff attributed to her medications, and sometimes experiences panic when in a crowd, and there are weeks when she is unable to leave the house, with Plaintiff's also admitting she was able to care for herself and her children, including getting the children up and ready for school, walking them to and from the bus stop, helping with homework, and cleaning the house. AR at 20.

Rather than simply rejecting Plaintiff's subjective complaints, the ALJ references medical reports and records from Plaintiff's mental health providers, as well as consultative examinations conducted in connection with Plaintiff's disability benefits application that are also inconsistent with Plaintiff's subjective complaints. AR at 20-23. Such evidence includes, *inter alia*, Plaintiff' mental health treatment notes from Niagara County Department of Health ("NCDH") where Plaintiff saw counselors for therapy as well as psychiatrist Hany Shehata, M.D. ("Dr. Shehata"), from February 4, 2014 till November 27, 2017. AR 467-711, 720-993. The ALJ noted Plaintiff's initial assessment at NCDH was upon "self-referral," and despite such positive findings on mental status

11

examination as flat affect, apathetic mood, tangential speech, a negligible degree of conceptual disorganization, preoccupation with external stressors, and fair judgment, Plaintiff's recent and remote memory were not impaired, and attention and concentration indicated Plaintiff was able to attend and maintain focus. AR at 20-21 (citing AR at 470).

On April 6, 2015, Dr. Shehata completed an "Employability Assessment" of Plaintiff, reporting Plaintiff's medical condition as "Brief Psychotic Disorder" for which Plaintiff was undergoing psychotherapy and pharmacological management with a fair prognosis, and an expected duration of 7 to 11 months, AR at 346, assessing Plaintiff's mental functioning as moderately limited in understanding, remembering, and carrying out instructions, interacting appropriately with others, and maintaining socially appropriate behavior without exhibiting behavior extremes, very limited as to maintaining attention/concentration, making simple decisions, and functioning in a work setting at a consistent pace, and not limited with regard to maintaining basic standards of personal hygiene and grooming.[6] AR at 347. Dr. Shehata's assessment is largely consistent with the consultative psychiatric examination performed by Susan Santarpia, Ph.D. ("Dr. Santarpia"), less than two months later on May 14, 2015. AR at 425-30. As relevant, Dr. Santarpia found Plaintiff oriented in all three spheres, with intact attention and concentration, intact recent and remote memory, average cognitive functioning, fair insight and judgment, able to tend to personal hygiene and grooming, and had a valid driver's license. *Id.* Plaintiff presented as able to follow and understand simple

---

[6] The ALJ refers to Dr. Shehata's Employability Assessment as Dr. Shehata's March 2015 opinion, AR at 24, presumably because the form authorizing the release of such medical information is signed by Plaintiff and dated March 25, 2015. AR at 346.

directions and instructions, perform simple tasks independently, maintain attention, concentration, and a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others and appropriately deal with stress within normal limits, although Plaintiff demonstrated moderate impairment in performing complex tasks independently and Plaintiff's difficulties were attributed to grief. *Id.* Dr. Santarpia's diagnosis was adjustment disorder with mixed anxiety and depressed mood, with psychotic features, controlled. *Id.* On June 29, 2015, state agency psychological consultant L. Hoffman ("Hoffman"), reviewed the Administrative Record and concluded Plaintiff, despite some cognitive/psychological difficulties, and a severe affective disorder and anxiety disorder, AR at 76, nevertheless remained capable of performing simple tasks, making appropriate decisions, relating adequately with others, appropriately dealing with stress, carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, and making simple work-related decisions. AR at 79-81.

On August 21, 2015, Dr. Shehata produced a handwritten note indicating that because of depression, anxiety and trauma related to the recent death of Plaintiff's second son, Plaintiff "will have difficulty maintaining a job at least of the time being." AR at 438. The ALJ, however, observed that Plaintiff's Global Assessment of Functioning Scale ("GAF") scores[7] for that same time reflected Plaintiff had only moderate

---

[7] The GAF Scale was "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychiatric problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n. 1 (2d Cir. 2006) (alterations in original) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM"), 32 (4th ed. 2000)). Although GAF scores are intended only to make treatment decisions, rather then disability determinations, and may be relevant to the ALJ's RFC determination, *Gonzalez v. Colvin*, 2016 WL 4009532, at * 5 (W.D.N.Y. July 27, 2016), the GAF scale is "no longer in use," *Kaczowski v. Colvin*, 2016 WL 5922768, at *12 n. 5 (S.D.N.Y. Oct. 11, 2016) (citing DSM (5th ed. 2013)), yet "the Commissioner may still consider GAF scores as one factor among

13

symptoms of functional limitation. AR at 23. Following the administrative hearing, Plaintiff underwent a further consultative psychiatric evaluation by Gregory Fabiano, Ph.D. ("Dr. Fabiano"), who diagnosed Plaintiff with adjustment disorder with depression and anxiety, chronic, but opined the results of his examination were not consistent with psychiatric problems sufficiently significant as to interfere with Plaintiff's ability to function on a daily basis. AR at 23 (citing AR at 712-720).

  Significantly, the court's review of this evidence establishes it is as the ALJ presented, *i.e.*, a review of Plaintiff's treatment notes from NCDH establishing that Plaintiff's mental health generally improved throughout her treatment. *Compare*, *e.g.*, AR at 467-92 (earlier progress notes from February 4, 2014 through December 5, 2014, diagnosing Plaintiff with episodic depression and continuous stress, describing Plaintiff's mental status as including flat affect, apathetic mood, wishing to be dead although without suicidal ideation, and thought content preoccupied with stressors including death of Plaintiff's mother and sons, and assessing Plaintiff as a moderate risk), *with* AR at 967-993 (later progress notes from September 21 through November 27, 2017 indicating Plaintiff continued to be treated for chronic grief, depression and anxiety, but with Plaintiff describing her stressors as problems dealing with her middle daughter as well as harassment from her children's father). Accordingly, the ALJ did not simply recite those subjective assertions of Plaintiff the ALJ found to be inconsistent with the medical evidence but, rather, the ALJ sufficiently specified the reasons she rejected Plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms. *Cichocki*, 534 Fed.Appx. at 76.

---

others." *Pena Lebron v. Comm'r of Soc. Sec.*, 2019 WL 1429558, at *3 n. 3 (S.D.N.Y. Mar. 29, 2019) (citation and quotation marks omitted).

Judgment on the pleadings is thus DENIED as to Plaintiff and GRANTED as to Defendant on this argument.

## 2. Treating Physician Rule

Plaintiff argues the ALJ violated the treating physician rule by assigning "little weight" to the opinion of Plaintiff's long-time treating psychiatrist, Dr. Shehata, because such opinion was inconsistent with Plaintiff's GAF scores, Plaintiff's Memorandum at 19-21, finding Dr. Shehata's opinion was not supported by any abnormal mental status findings with regard to maintaining attention and concentration, *id.* at 21-22, and failing to reference any records supporting the ALJ's determination that Plaintiff's functioning dramatically improved. *Id.* at 23. In opposition, Defendant maintains the ALJ sufficiently explained her reasons for giving more weight to the opinions of consultative examiners Drs. Fabiano, Santarpia, and Hoffman, than to Dr. Shehata's more restrictive opinion, Defendant's Memorandum at 13-16, did not give "undue weight" to Plaintiff's GAF scores, *id.* at 16-18, and properly considered that Dr. Shehata opined Plaintiff's limitations posed by Plaintiff's mental health issues were not expected to last more than 11 months, which was consistent with Plaintiff's own statements that her treatment was effective and helped her. *Id.* at 18. In reply, Plaintiff maintains Defendant failed to "meaningfully respond to Plaintiff's specific challenges to the ALJ's assignment of weight." Plaintiff's Reply at 2-3. Plaintiff's argument on this point is without merit.

Generally, the opinion of a treating physician is entitled to significant weight, but is not outcome determinative and only entitled to significant weight when "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.'" *Crowell v. Comm'r*

of Soc. Sec. Admin., 705 Fed.Appx. 34, 35 (2d Cir. Dec. 1, 2017) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), and 20 C.F.R. § 404.1527(d)(2)). Where, however, the ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so. *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Here, substantial evidence in the record establishes the ALJ did not violate the treating physician rule.

As noted, Discussion, *supra*, at 13 n. 7, although with the Fifth Edition of the DSM, the GAF scale is no longer used, the Commissioner is permitted to consider GAF scores as one factor among others in assessing the impact of Plaintiff's mental impairments on her ability to perform substantial, gainful activity. A plain review of the ALJ's Decision establishes that is what the ALJ did here. In particular, the ALJ found Plaintiff's relatively stable GAF scores of 55 or higher, which equates to at most moderate limitations, were consistent with Plaintiff's mental status examinations which "remained relatively unimpressive . . .," with Plaintiff exhibiting "cheerful" mood, appropriate affect, and with attention and concentration within normal limits. AR at 23. Accordingly, the record establishes the ALJ did not give undue weight to Plaintiff's GAF scores but, rather, considered such scores as one factor that was consistent with other substantial evidence in the record.

The record also establishes the ALJ sufficiently explained her reasons for giving more weight to the opinions of consultative examiners Drs. Fabiano, Santarpia, and Hoffman, than to Dr. Shehata's more restrictive opinion. The ALJ is permitted to rely on a consultative examiner's opinion that is based on a physical examination and is consistent with other evidence in the record. *See Tankisi v. Comm'r of Soc. Sec.*, 521

Fed.Appx. 29, 32 (2d Cir. Apr. 2, 2013) ("A consultative examination is used to 'try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision' on the claim.") (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). Here, the ALJ found the opinions of Drs. Fabiano, Santarpia, and Hoffman were largely consistent with Dr. Shehata's April 6, 2015 Employability Assessment, insofar as Dr. Shehata reported Plaintiff had moderate limitations with understanding, remembering, and carrying out instructions, interacting appropriately with others, and maintaining socially appropriate behavior without exhibiting behavior extremes, very limited as to maintaining attention/concentration, making simple decisions, and functioning in a work setting at a consistent pace, and not limited with regard to maintaining basic standards of personal hygiene and grooming. AR at 24. As discussed, Discussion, *supra*, at 12-14, in their respective opinions, Drs. Fabiano, Sartapia, and Hoffman found Plaintiff with similar restrictions, and none of these medical sources indicated Plaintiff was unable to work except for Dr. Shehata's assessment that Plaintiff's mental health limitations were expected to last from 7 to 11 months. AR at 346. Not only does this period of time fall short of the minimum 12 continuous months durational requirement to establish disability under the Act, 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(3)(A), but Dr. Shehata does not indicate that Plaintiff is unable to work during that period of time based on such impairments. Accordingly, there is no merit to Plaintiff's argument that the ALJ erred in assigning this portion of Dr. Shehata's opinion little weight.

Similarly, the ALJ did not err in declining to afford controlling weight to Dr. Shehata's August 21, 2015 handwritten note summarily advising that Plaintiff has "been

on multiple psychiatric meds for depression and anxiety as well as post traumatic disorder" attributed to the death of Plaintiff's second son during the previous Christmas season, as well as to stress caused by Plaintiff's bronchial asthma and caring for her son who has severe asthma, such that "Plaintiff will have difficulty maintaining a job at least for the time being." AR at 438. Not only is Dr. Shehata's reference to the "time being" too vague to permit the ALJ to assess the amount of time for which Dr. Shehata anticipated Plaintiff would be unable to work but, as the ALJ found, AR at 24, the handwritten note does not include any "function-by-function" analysis of Plaintiff's work-related capacity and, moreover, does not specifically state that Plaintiff is unable to work, only that she would "have difficulty maintaining a job." The ALJ thus did not err in refusing to grant the note controlling weight.

Accordingly, the ALJ decision to give more weight to the consultative opinions of Drs. Fabiano, Santarpia, and Hoffman than to the more restrictive opinion of Dr. Shehata is supported by substantial evidence in the record and did not violate the treating physician rule.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 13) is DENIED; Defendant's Motion (Dkt. 14) is GRANTED. The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: September 11, 2019
           Buffalo, New York